Alexander Del Giorno, J.
Claimants entered into a contract with the State of New York under date of December 28, 1964, providing for construction work on the Franklin D. Roosevelt Drive, and designated as Contract FAFDR 64-1. Claimants had substantially completed work on said contract, except for some minor punch list items, by October 15, 1967. The State accepted said work on February 26,1968. A completed final estimate was *14 forwarded to claimants on October 8, 1968, and on October 17, 1968 a final payment (concededly dne to the claimants) in the amount of $154,536.36, was tendered to claimants by the State. This tender of final payment was rejected by claimants and, on November 6, 1968, a notice of claim was duly filed.
By notice of motion dated November 13,1968, claimants moved for a severance of this first cause of action, which was a demand for payment of the said final amount concededly due, together with interest thereon. The State opposed this motion, contending that no interest may be awarded because of claimants’ refusal to accept the final payment when tendered. In support of its position the State relies upon the so-called “ final payment ” clause of the Public Works Specifications of January 2, 1962 which reads as follows:
“ Acceptance of Final Payment. The acceptance by the Contractor, or by anyone claiming by or through him, of the final payment shall constitute and operate as a release to the State from any and all claims of any liability to the Contractor for anything theretofore done or furnished for or relating to or arising out of the work done thereunder, and for any prior act, neglect, or default on the part of the State or any of its officers, agents, or employees, excepting only a claim against the State for the amounts deducted or retained in accordance with the terms and provisions of the contract, and excepting a claim for delay or one arising from ‘ Disputed Work ’ as set forth in a preceding paragraph and filed in a signed statement form with the Superintendent.
“ The Contractor is warned that the execution by him of a release in connection with the acceptance of the final payment, containing language purporting to reserve claims other than those herein specifically excepted, or for claims for amounts deducted by the Comptroller, shall not be effective to reserve such claims, notwithstanding anything stated to the contrary, orally or in writing by any officer, agent or employee of the State.
“ Should the Contractor refuse to accept the final payment as tendered by the Comptroller, it shall constitute a waiver of any right to interest thereon(Italics added.)
The matter of the moneys concededly due to the claimants was set down for trial and, after hearing testimony and evidence on behalf of both sides, it is the determination of the court that the State was dilatory in preparing and forwarding a completed final estimate to the claimants. All work on this contract, with the exception of one item, was fully completed by October, 1967. The sole remaining item, repair of a drain damaged by traffic, *15 was completed in December, 1967. Nonetheless, it was not until two months after total completion, and more than four months after substantially full completion that the State even accepted the contract work. Thereafter, the State delayed an additional seven months before forwarding the final estimate.
The State contends that it could not have completed the final estimate earlier because the work of processing order on Contract No. 33 had not been completed. However, the record is clear that the quantities involved in said order on contract had been computed by the District Engineer’s office and the order itself forwarded to Albany as early as December, 1967. It was not until July, 1968, however, that said order was revised and returned. No reason or explanation was offered by the State to account for the inordinately long delay in processing that document. It did not appear at the trial that any substantial changes or revisions were made during the processing of the order on contract.
Upon the record and the proof submitted therein, it is the opinion of the court that a reasonable time for the State to have prepared the final estimate and tendered final payment thereunder would have been the date of acceptance of the contract, namely, February 26, 1968. The failure of the State to do so constituted a material breach of its contract with the claimants, thereby foreclosing it from availing itself of the provision in the contract that refusal of the tender constitutes a waiver of interest. (A. E. Ottaviano, Inc. v. State of New York, 32 A D 2d 87; Merritt-Chapman & Scott Corp. v. State of New York, 25 AD 2d 455.)
The claimants and the State have submitted findings, in which it is provided that the State is entitled to credit for the interest received by the claimants on the securities deposited pursuant to section 139 of the State Finance Law for the period from February 26, 1968 to the date of entry of (this) judgment. The court finds no such sanction in section 139, which provides, rather, that the Comptroller shall pay to the claimants any interest he may collect, or forward to claimants any coupons which may be due on said bonds.
The conclusion reached by the court renders it unnecessary to consider the other issues raised by claimants. If, as alleged, the final payment may be other than the amount concededly due, this issue may be resolved at the trial of the claim itself. Claimants are entitled to judgment against the State of New York in the amount of $154,536.36 together with interest from February 26,1968 to October 17,1968, the date of tender of final payment, and the State is further directed to return the securities of the *16 par value of $130,000 presently on deposit with the Comptroller.
The court also finds it necessary to pass comment on the so-called severance action. Heretofore, before the decisions in Higgins & Sons v. State of New York (20 N Y 2d 425) and Terry Contr. v. State of New York (23 N Y 2d 167) a severance action was merely a simple, half-hour hearing whereby the ‘ ‘ waiver of interest” provision found in all State contracts was “ legally ” circumvented. The claimant presented an order allowing the severance, and a decision awarding the amount concededly due. These forms were approved a priori by the State. One witness testified to the facts set out in the decision, without any cross-examination. The question of interest was then deferred to the main trial. Since the above decisions, the State has felt obliged to refrain from entering into any such stipulations and demands a full trial concerning the interest in issue. Both sides must now prepare, as if for trial, present witnesses and documents, examine and cross-examine, order the minutes, file findings of fact and conclusions of law and memoranda. The court must read the minutes, pass upon the findings submitted and make its own independent decision. In these days of overwhelming calendar congestion, instead of a half hour, this type of “ trial ” takes some two days of court work, besides a day or two to finalize the court’s determination; and, yet, the same question of interest must again be litigated when the claiin itself comes up for trial. The court sees no reason for the interest waiver clause in the State contracts. After all, the money concededly due is the claimant’s money and it should be paid to a claimant without strings attached. Let us not forget that while the State has it in its possession the State is earning interest on it. The State should not benefit both ways. In section 8 of the Court of Claims Act, the State waives its immunity and permits itself to be sued in like manner as one would sue an individual or a corporation. Should such individual or corporation withhold a ‘ ‘ conceded ’ ’ sum of money, such individual would be ordered to pay it back, with interest, on the sound theory that while he held such sum he did or could profit from its use while the rightful owner was being deprived of such opportunity.